UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALI KOURANI,

                    Plaintiff,

            -against-

DEPARTMENT OF JUSTICE,

                    Defendant.

1:24-CV-0857 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff Ali Kourani, who is currently incarcerated in the United States Penitentiary in

Marion, Illinois, filed this action *pro se*, asserting claims under the Freedom of Information Act

("FOIA"), the Administrative Procedure Act ("APA"), claims of "breach of confidentiality,"

claims of conspiracy under New York State law, and claims of violations of his federal

constitutional rights. He sues the United States Department of Justice ("DOJ"), and seeks

monetary damages, as well as injunctive and declaratory relief; he also seeks immediate

injunctive relief via a temporary restraining order and a preliminary injunction. Plaintiff

additionally requests that his complaint be sealed.[1] The Court construes Plaintiff's complaint as

asserting claims for damages under the Federal Tort Claims Act ("FTCA"); claims for injunctive

and declaratory relief, including claims of constitutional violations, under the APA; and claims

under state law.

---

[1] In an abundance of caution, until the Court issued this order, electronic access to
Plaintiff's complaint, request to proceed *in forma pauperis*, and his initial prisoner trust account
report (ECF 1-3) were limited to a "case participant-only" basis.

By order dated March 5, 2024, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees.[2] For the reasons discussed below, the Court denies all of Plaintiff's requests for relief and dismisses this action.

## STANDARD OF REVIEW

The Prison Litigation Reform Act requires that federal courts screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint if the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

## BACKGROUND

After the Court summarizes the allegations in Plaintiff's complaint, it will summarize the procedural history of Plaintiff's associated criminal matter in order to contextualize the claims that Plaintiff asserts in this civil action.

**A.      Plaintiff's allegations and the relief he seeks**

Plaintiff alleges the following: In February 2017, Plaintiff met with his attorney, Mark Denbeaux, Esq.; they decided that Plaintiff should meet with officials from the Federal Bureau of Investigation ("FBI") "due to [FBI officials'] consistent and relentless demands to meet with [him] to question him." (ECF 1, at 5.) Plaintiff insisted to Denbeaux that any meeting with FBI

---

[2] Prisoners are not exempt from paying the full filing fee, even when they have been granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1).

officials would have to remain confidential because of his fear for his own safety, the safety of

his children, who were living with their mother in Canada, and for the safety of his family

members living in Lebanon if it were publicly known that he was attending such a meeting. He

also feared that the FBI's office in New York would "leak" the information discussed in such a

meeting. (*Id.* at 6.) Denbeaux telephoned the FBI's office in the New York and spoke to FBI

Special Agents Kerri Shannon and Joseph Costello. Denbeaux emphasized to them that any

meeting between FBI officials and Plaintiff would have to remain confidential; Shannon and

Costello agreed.

On March 23, 2017, Plaintiff and Denbeaux met with Shannon and Costello at the Seton

Hall Law School, in Newark, New Jersey, where Denbeaux worked as a law professor.

Denbeaux began the meeting by emphasizing the need to keep secret the fact that such a meeting

took place, any discussions conducted during that meeting, as well as any future meetings with

and discussions between Plaintiff, Denbeaux, and FBI officials, for the reasons discussed above.

Plaintiff asked Shannon and Costello whether any other FBI officials knew about the meeting,

because he knew the FBI's office in New York to "leak" such information, and because he had

been stopped, frisked, and interrogated many times by FBI agents in the previous months, yet

never arrested. Shannon and Costello assured Plaintiff that only themselves and their superiors

were aware of the meeting. Shannon and Costello also demanded that such meetings remain

confidential, and asked Plaintiff if he had informed anyone, including any members of his

family, that he was meeting with FBI officials; Plaintiff answered that he had not told anyone

and would not do so.

Denbeaux then demanded that nothing Plaintiff would say during the meeting would be

used against Plaintiff and that Plaintiff would not be prosecuted, and Denbeaux stated that

"Plaintiff is a patriotic U.S. citizen who is trying to help his country"; Shannon and Costello agreed to Denbeaux's demands. (*Id.* at 9.) Plaintiff also demanded that the United States Government "bring his kids[,] who were born in New York, from Canada, [and] allow his [father] and sister back to the United States"; he further made "other small" demands. (*Id.*) Shannon and Costello agreed to all of Plaintiff's additional demands, "with [an] estimated schedule to execute," but said that such agreements were contingent on them speaking "to their superiors on the phone." (*Id.*) With his demands agreed to, Plaintiff began to answer their questions.[3]

Plaintiff and Denbeaux again met with Shannon and Costello on April 3, 5, 14, and 26, 2017, all apparently at the Seton Hall Law School; during each meeting, Plaintiff and Denbeaux "talked about the confidentiality status of the meetings and of the measures taken to ensure such secrecy." (*Id.* at 10.) Shannon and Costello agreed that such meetings would remain confidential. (*See id.* at 10-13.) In the weeks following Plaintiff's last meeting with Shannon and Costello, Denbeaux inquired with the FBI about the progress of Plaintiff's agreed-to demands, as it appeared that the Government "was dragging its feet." (*Id.* at 13.) At no time was the issue of the confidentiality of Plaintiff's meetings with Shannon and Costello ever contested by the Government.

On June 1, 2017, Plaintiff was arrested by FBI officials and members of the New York City Police Department in the Bronx, New York; he was then taken to "One Federal Plaza,"[4]

---

[3] Plaintiff asserts that none of his abovementioned alleged demands that were agreed to by Shannon and Costello, other than the demand for confidentiality, is the subject of his claims in this action. (*See* ECF 1, at 9-10.) Plaintiff also asserts that Costello promised to find a job for Plaintiff in Plaintiff's field, and to assist Plaintiff's brother with his then-pending immigration proceedings. (*See id.* at 10, 12-13.)

[4] The Court understands this location to be the Jacob K. Javits Federal Building at 26 Federal Plaza, in New York, New York.

where he met Shannon, Costello, as well as Assistant United States Attorney Bove. Shannon and Costello assured Plaintiff that he would be fine. Plaintiff was allowed to telephone Denbeaux, who informed Plaintiff that he was "furious and mad about the arrest[,] [and that] he had already relayed that to . . . Bove." (*Id.* at 14.) During that telephone call, Denbeaux resigned as Plaintiff's attorney; later that day, public defender Peggy Cross-Goldenberg, Esq., was appointed to represent Plaintiff with respect to his federal criminal action.

Plaintiff then met with his new attorney, Cross-Goldenberg, and expressed his fears for his own safety and that of his family members if his meetings with Shannon and Costello were made public. Cross-Goldenberg assured him that, at that time, the criminal complaint commencing his federal criminal action was sealed. She also assured him that "he will be fine, very soon out, and [she] even asked [him] about his clothes sizes for [the] next day." (*Id.* at 14-15.) That night, Plaintiff slept at a hotel where FBI agents monitored him; they made sure that the public did not see him handcuffed.

The next day, on June 2, 2017, Plaintiff met with Costello and Shannon at the office of the United States Attorney for the Southern District of New York; he "refused to talk to [them] because of their broken promises." (*Id.* at 15.) In a meeting with a federal prosecutor, "Plaintiff entered a proffer agreement, answered the prosecutor['s] questions[,] and denied other ungrounded allegations." (*Id.*) Plaintiff was then arraigned, and later taken to the federal Metropolitan Correctional Center in New York, where he was confined in a special housing unit by himself.

One week after his arrest, Plaintiff's criminal complaint, which commenced his federal criminal matter, was unsealed "with[out] any regard to the promise of confidentiality, to the law, the safety of . . . [P]laintiff and his family[,] [or to] the prospect of anyone trusting the

government." (*Id.* at 15-16.) "The [criminal] complaint was only based on what was allegedly

said in the 'confidential five meetings' at Seton Hall [Law School]. The [criminal] complaint

was a total distortion of the reality of the five confidential meeting[s]." (*Id.* at 16.)

In late June 2017, Plaintiff was indicted.[5] Plaintiff was appointed another defense

attorney, Alexi Schacht, Esq., who filed a motion with Judge Hellerstein "to suppress

[Plaintiff's] alleged statements from the five confidential meetings." (*Id.*) Costello, Shannon, and

Denbeaux all testified in Plaintiff's criminal matter "that confidentiality was promised and

agreed on, [but] Judge Hellerstein denied the motion based on the totality of the circumstances of

the questioning." (*Id.* at 16-17.) "Judge Hellerstein still acknowledged that confidentiality of

cooperation was promised to . . . [P]laintiff . . . by the FBI agents 'but' it was a confidentiality

from [the] Lebanese community in Lebanon and abroad." (*Id.* at 17.) Judge Hellerstein, however,

"never gave a remedy for the broken promise of confidentiality as he acknowledged." (*Id.*)

Plaintiff appealed, but the United States Court of Appeals for the Second Circuit "did not even

address the subject of 'confidentiality of the meetings'. . . . [e]ven though . . . Plaintiff[,] in his

supplemental brief[,] made it clear [that] if it wasn't for the promise of confidentiality[,] he

would have never talked to the FBI." (*Id.* at 17-18.) Plaintiff filed a motion for reconsideration

with the court, but Judge Hellerstein did not rule on it.

Plaintiff asserts that "a promise of confidentiality . . . nullifies any other warnings of what

could be said can be used against its sayer in [a] court of law." (*Id.* at 19.) He asks the Court to:

> [d]eclare that [the] information at issue is confidential information, obtained by a
> promise of confidentiality, from a confidential source (Plaintiff here), and was
> kept confidential by Plaintiff, and therefore is protected by FOIA [e]xemptions,
> and its use as an open source and its release to the public caused substantial harm

---

[5] Plaintiff was prosecuted in a criminal matter in this court known as *United States v. Kourani*, 1:17-CR-0417 (S.D.N.Y.), which was presided over by the Honorable Alvin K. Hellerstein, United States District Judge.

and life threatening situations to . . . Plaintiff and his family and . . . [n]ational [s]ecurity.

(*Id.* at 25.) He also asks the Court to: "[d]eclare that the DOJ decision to release the information at issue is arbitrary, capricious and contrary to law in violation of [the] APA, . . . the Due Process Clause and other laws." (*Id.*)

Plaintiff further asks the Court to "[p]ermanently and immediately enjoin the DOJ and others, and their officers, agents, and employees and those acting in concert with them, from disclosing the information at issue."[6] (*Id.* at 25-26.) He additionally seeks monetary damages.

## B.   Plaintiff's criminal case

On May 31, 2017, a criminal complaint was filed in this court that led to Plaintiff's criminal case, *United States v. Kourani*, 1:17-CR-0417 (AKH) (S.D.N.Y.), and a warrant was issued for his arrest. Plaintiff was arrested one day later, on June 1, 2017. On June 28, 2017, the office of the United States Attorney for the Southern District of New York filed an indictment, accusing Plaintiff of violating 18 U.S.C §§ 2339B(a)(1), (d)(1)(A), (d)(1)(C), (d)(1)(D), (d)(1)(E), (d)(1)(F), (d)(2), 3238, and 2 (providing material support to a foreign terrorist organization, to wit, Hezbollah) (count one); 18 U.S.C. §§ 2339B(a)(1), (d)(1)(A), (d)(1)(C), (d)(1)(D), (d)(1)(E), (d)(1)(F), (d)(2), and 3238 (conspiring to provide material support to Hezbollah) (count two); 18 U.S.C. § 2339D(a), (b)(1), (b)(3), (b)(4), (b)(5), (b)(6), 3238, and 2 (receiving military-type training from Hezbollah) (count three); 18 U.S.C. §§ 371, 2339D(a), (b)(1), (b)(3), (b)(4), (b)(5), (b)(6), and 3238 (conspiring to receive military-type training from Hezbollah) (count four); 18 U.S.C. §§ 924(o) and 3238 (conspiring to possess, carry, and use machine guns and destructive devices during and in relation to crimes of violence) (count five);

---

[6] Plaintiff seeks both a temporary restraining order and preliminary injunction. (ECF 1, at 26.)

50 U.S.C. § 1705(a), 18 U.S.C. §§ 3238 and 2, 31 C.F.R. §§ 595.204, 595.205, and 595.311

(making or receiving, and conspiring to make or receive, a contribution of funds, goods, and

services to and from Hezbollah) (counts six and seven); 18 U.S.C. §§ 1425(a), 3291, and 2

(unlawful procuring of citizenship or naturalization to facilitate an act of international terrorism)

(count eight). ECF 1:17-CR-0417, 7 (filed indictment).

Before trial, Plaintiff filed a motion challenging the admissibility of the statements that he

made to Shannon and Costello during the abovementioned meetings. In an opinion and order

dated April 26, 2018, Judge Hellerstein denied that motion. *United States v. Kourani*, No. 17-

CR-0417 (AKH), 2018 WL 1989583 (S.D.N.Y. Apr. 26, 2018). In that opinion and order, Judge

Hellerstein held that Shannon and Costello lacked the authority to make an offer of immunity

from prosecution and, therefore, Plaintiff could not specifically enforce any such offer, if it was

made. *See id.* at *3. Judge Hellerstein also held that Plaintiff's statements to Shannon and

Costello were voluntary. *Id.* at *3-7. In doing so, Judge Hellerstein noted that Plaintiff "had

previously been offered (and had rejected) a written confidentiality agreement in 2016,

indicating that he was at least aware that he could obtain a formal agreement from the agents."

*Id.* at *4. Also, in doing so, Judge Hellerstein found "that no . . . offer of immunity or non-

prosecution was made." *Id.* at *5. Judge Hellerstein considered Plaintiff's "attempt to transform

the agent[s'] promise of 'confidentiality' into an offer of immunity or non-prosecution," but

found that such an attempt had no merit because "the only plausible interpretation of the agents'

promise of confidentiality [was that it related *only* to keeping [Plaintiff's] cooperation from

reaching members of the Lebanese community, in the [United States] and abroad." *Id.* (emphasis

in original). Judge Hellerstein further held that such a promise of confidentiality "was not

intended as an offer of immunity or non-prosecution, nor was it understood as such by [Plaintiff]

8

or by his lawyer." *Id.* (footnote omitted). Thus, Judge Hellerstein held that Plaintiff's "argument that the agent[s'] promise of confidentiality render[ed] his statements involuntary fails." *Id.*

Following a jury trial in which Plaintiff was found guilty of all counts, save count five, as set forth in a judgment issued December 18, 2019, and entered the next day, Judge Hellerstein sentenced Plaintiff to an aggregate prison term of 480 months, to be followed by a supervised release term of 5 years.[7] ECF 1:17-CR-0417, 141 (criminal judgment). Plaintiff appealed. On July 27, 2021, the United States Court of Appeals for the Second Circuit affirmed the judgment of conviction. *United States v. Kourani*, 6 F.4th 345 (2d Cir. 2021). In its affirmance, the Second Circuit noted Plaintiff's challenge to Judge Hellerstein's denial of the abovementioned motion, but held that Plaintiff's arguments were unavailing "when evaluated under the totality of the circumstances of the 2017 interviews." *Id.* at 352. On October 7, 2021, the Second Circuit denied Plaintiff's petition for rehearing or, in the alternative, rehearing *en banc*. *United States v. Kourani*, No. 19-4292 (2d Cir. Oct. 7, 2021). On December 14, 2021, Plaintiff filed an application with the Supreme Court of the United States to extend the time to file in that court a petition for a writ of *certiorari*; on January 20, 2022, Justice Sotomayor granted that application, allowing Plaintiff until March 7, 2022, to file such a petition. *Kourani v. United States*, Application No. 21A346 (Jan. 20, 2022). There is no indication, however, that Plaintiff ever filed a petition for a writ of *certiorari* with Supreme Court of the United States.

In March 2023, Plaintiff filed in this court a *pro se* motion to vacate, set aside, or correct his sentence, under 28 U.S.C. § 2255. In an order dated June 1, 2023, Judge Hellerstein denied

---

[7] In an order dated November 27, 2019, following the jury verdict convicting Plaintiff, *inter alia*, of procuring, contrary to law, his naturalization to facilitate an act of international terrorism, in violation of 18 U.S.C. § 1425(a), but before judgment in Plaintiff's criminal matter had been entered, Judge Hellerstein revoked Plaintiff's American citizenship. ECF 1:17-CR-0417, 138.

Plaintiff's Section 2255 motion as untimely. ECF 1:17-CR-0417, 190. On appeal, in an order

dated February 21, 2024, the Second Circuit vacated the district court's judgment denying the

Section 2255 motion as untimely, and remanded the matter to the district court "to evaluate the

timeliness of [Plaintiff's Section 2255] motion in light of the prison mailbox rule[] and the

extension the Supreme Court granted [to him] to file his petition for certiorari in his direct

appeal." *Kourani v. United States*, No. 23-6982 (2d Cir. Feb. 21, 2024).

## DISCUSSION

**A.    Request to seal complaint**

For the reasons explained below, the Court must deny Plaintiff's request to seal the

complaint commencing this civil action. Both the common law and the First Amendment protect

the public's right of access to court documents. *See Nixon v. Warner Comms., Inc.*, 435 U.S. 589,

597-99 (1978); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91-92 (2d Cir. 2004). This right

of access is not absolute, and "the decision as to access [to judicial records] is one best left to the

sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and

circumstances of the particular case." *Nixon*, 435 U.S. at 599 (footnote omitted).

The United States Court of Appeals for the Second Circuit has set forth a three-part

analysis to determine whether, under the common law, a document relating to a lawsuit should

be made available to the public. *See Lugosch v. Pyramid Co.*, 435 F.3d 110, 119-20 (2d Cir.

2006). First, the Court must determine whether the document at issue is indeed a "judicial

document," to which the public has a presumptive right of access. *Id.* at 119. Judicial documents

are those that are "relevant to the performance of the judicial function and useful in the judicial

process." *Id.* (internal quotation marks and citation omitted). Second, if the Court determines that

the material to be sealed is a judicial document, then the Court must determine the weight of the

presumption of access. *Id.* "[T]he weight to be given the presumption of access must be

governed by the role of the material at issue in the exercise of Article III judicial power and the
resultant value of such information to those monitoring the federal courts." *United States v.
Amodeo*, 71 F.3d. 1044, 1049 (2d Cir. 1995). Finally, "the court must balance competing
considerations against" the presumption of access. *Lugosch*, 435 F.3d at 120 (internal quotation
marks and citation omitted). "Such countervailing factors include but are not limited to the
danger of impairing law enforcement or judicial efficiency and the privacy interests of those
resisting disclosure."[8] *Id.* (internal quotation marks and citation omitted). If the information at
issue has already been made publicly available, such availability weighs against restricting
public access to it. *See United States v. Basciano*, Nos. 03-CR-0929, 05-CR-0060, 2010 WL
1685810, at *3-4 (E.D.N.Y. Apr. 23, 2010) (privacy interest in sealing documents was weakened
by the fact that the public was already aware of the relevant information); *see also Moroughan v.
Cnty. of Suffolk*, No. 12-CV-0512, 2021 WL 280053, at *4 (E.D.N.Y. Jan. 24, 2021) ("[G]iven
the critical nature of those issues in this litigation and their presence in other public documents, it
is the Court's view that the public has a strong interest in access to *all the evidence* surrounding
those issues in the Court's Opinion in order to allow the public to make their own assessment of
the parties' summary judgment arguments and the Court's decision." (italics in original)); *United*

---

[8] As to the relevant First Amendment analysis, there are two different approaches. The
first is "the so-called 'experience and logic' approach[,] [which] requires the court to consider
both whether the documents 'have historically been open to the press and general public' and
whether 'public access plays a significant positive role in the functioning of the particular
process in question." *Lugosch*, 435 F.3d at 120 (citations omitted). The Second Circuit has noted
that "[t]he courts that have undertaken this type of inquiry have generally invoked the common
law right of access to judicial documents in support of finding a history of openness." *Id.*
(citation and internal quotation marks omitted). As to the second approach, courts "consider[] the
extent to which the judicial documents are 'derived from or [are] a necessary corollary of the
capacity to attend the relevant proceedings.'" *Id.* (citation and footnote omitted, alteration in
original). Here, because the common law right of access requires the Court to deny Plaintiff's
request to seal the complaint, there is no need to discuss these approaches to First Amendment
analysis.

*States v. Cohen*, No. 18-CR-0602 (WHP), 2019 WL 3226988, at *1 (S.D.N.Y. July 17, 2019) ("[T]he involvement of most of the relevant third-party actors is now public knowledge, undercutting the need for continued secrecy."); *United States v. Key*, No. 98-CR-0446, 2010 WL 3724358, at *3 (E.D.N.Y. Sept. 15, 2010) ("[Defendant] offers no evidence that sealing now what has long been in the public record will prevent some enhanced risk of substantial prejudice to his or his family's safety."). "The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such an action." *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 826 (2d Cir. 1997).

Pleadings, which include the document that initiates a civil suit (a complaint), *see* Fed. R. Civ. P. 3, 7(a)(1), are considered judicial documents for the purpose of this analysis, *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 140 (2d Cir. 2016). Plaintiff's complaint is therefore considered a judicial document, and is, therefore, entitled to a strong presumption of public access.

Plaintiff seems to assert that, if his abovementioned interviews with FBI Special Agents Shannon and Costello were to be disclosed via the public availability of the complaint commencing this action, then his own safety, and that of his family members in the United States, Canada, and Lebanon, would be put at serious risk. While the Court acknowledges Plaintiff's concerns, the legal principles summarized above weigh against sealing the complaint. Since approximately June 2017, when the abovementioned criminal complaint or criminal indictment was filed and/or unsealed in Plaintiff's criminal matter in this court – which was more than six years before the court received the complaint commencing this civil action, on February 5, 2024 – and continuing during the pendency of Plaintiff's public criminal trial, appeal, and apparently, also during the pendency of Plaintiff's public Section 2255 matter in this court and

his appeal of that matter, Plaintiff's multiple interviews with Shannon and Costello have been a matter of public record. Thus, because that information has been public for years, there is no reason why the complaint commencing this civil action, which contains such information, should be sealed. The Court therefore denies Plaintiff's request to seal his complaint, and directs the Clerk of Court to make publicly available on the court's electronic docket of this action any documents heretofore subjected to a "case participant-only" electronic access restriction on that docket. (ECF 1-3.)

**B.     Claims on behalf of others**

To the extent that Plaintiff asserts claims on behalf of members of his family or anyone else, the Court must dismiss those claims. The statute governing appearances in federal court, 28 U.S.C. § 1654, "allow[s] two types of representation: 'that by an attorney admitted to the practice of law by a governmental regulatory body, and that by a person representing himself.'" *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) (quoting *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991)). A nonlawyer cannot bring suit on behalf of another person. *See United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 92 (2d Cir. 2008); *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998).

Plaintiff does not allege that he is an attorney. Thus, any claims that he asserts on behalf of members of his family or anyone else are dismissed without prejudice.

**C.     Sovereign immunity**

The Court must dismiss the claims that Plaintiff asserts on his own behalf against the DOJ under the doctrine of sovereign immunity. This doctrine bars federal courts from hearing all suits against the federal government, including suits against any agency of the federal government, such as the DOJ, except where sovereign immunity has been waived. *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586

(1941)); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("Because an action against a federal agency . . . is essentially a suit against the United States, such suits are . . . barred under the doctrine of sovereign immunity, unless such immunity is waived."). Examples of waivers of sovereign immunity are the FTCA, the APA, and FOIA.[9] The Court understands Plaintiff's complaint as asserting claims against the DOJ under the FTCA and the APA. As explained below, however, sovereign immunity has not been waived with respect to Plaintiff's claims brought on his own behalf.

   **1.     Claims under the FTCA**

   The FTCA provides for a waiver of sovereign immunity for certain claims for damages arising from the tortious conduct of federal officers or employees acting within the scope of their office or employment. *See* 28 U.S.C. §§ 1346(b)(1), 2680. Generally speaking, "[t]he proper defendant in an FTCA claim is the United States, not individual federal employees or agencies." *Holliday v. Augustine*, No. 3:14-CV-0855, 2015 WL 136545, at *1 (D. Conn. Jan. 9, 2015); *see also* 28 U.S.C. §2679(b)(1) ("The remedy against *the United States* provided by [the FTCA] . . . for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. . . ." (emphasis added)). The Court therefore dismisses Plaintiff's claims for damages against the DOJ, brought under the FTCA, under the doctrine of sovereign immunity, *see* 28 U.S.C. § 1915(e)(2)(B)(iii), and consequently, for lack of subject matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3). In light of Plaintiff's *pro se* status,

_____

   [9] As explained below, Plaintiff appears to assert a "reverse FOIA" claim." (ECF 1, at 21.)

however, the Court construes such claims as brought against the proper defendant, the United States of America.

A plaintiff must comply with the FTCA's procedural requirements before a federal court can entertain an FTCA claim. *See Johnson v. Smithsonian Inst.*, 189 F.3d 180, 189 (2d Cir. 1999), *abrogated on other grounds*, *United States v. Kwai Fun Wong*, 575 U.S. 402 (2015). Thus, before bringing a damages claim in a federal district court under the FTCA, a claimant must first exhaust his administrative remedies by filing a claim for damages with the appropriate federal government entity and must receive a final written determination. *See* 28 U.S.C. § 2675(a). Such an administrative claim must be in writing and be filed within two years of the claim's accrual. 28 U.S.C. §§ 2401(b), 2675(a). A claimant may thereafter challenge the Government's final administrative denial of his FTCA claim in a federal district court by filing an action within six months after the date of the mailing of the notice of final administrative denial by the federal entity. *See* § 2401(b). If no written final administrative determination is made by the appropriate federal entity within six months of the date of the claimant's filing of the administrative claim, the claimant may then bring an FTCA action in a federal district court. *See* § 2675(a). While this exhaustion requirement is jurisdictional and cannot be waived, *see Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005), "the FTCA's time bars are non jurisdictional and subject to equitable tolling," *Kwai Fun Wong,* 575 U.S. at 420.

To the extent that Plaintiff asserts claims for damages under the FTCA against the United States of America, the claim cannot go forward because he has not alleged facts demonstrating that he filed an administrative claim under the FTCA with a federal governmental entity (the DOJ) for damages and received a final written administrative determination before bringing this

action, nor has he alleged facts showing that it has been more than six months since he has filed

such an administrative claim. Accordingly, Court dismisses all of Plaintiff's claims for damages

against the DOJ and the United States of America under the doctrine of sovereign immunity, *see*

§ 1915(e)(2)(iii), and consequently, for lack of subject matter jurisdiction, *see* Fed. R. Civ. P.

12(h)(3); *Celestine*, 403 F.3d at 82.

       **2.**       **Claims under the APA**

       The APA, which is another statute that Plaintiff has invoked in his complaint as a vehicle

for relief, is also a limited waiver of sovereign immunity, allowing for judicial review of a

federal agency's final administrative action; it does not allow for damages. *See* 5 U.S.C. §§ 702,

704; *Cnty. of Suffolk v. Sebelius*, 605 F.3d 135, 140-41 (2d Cir. 2010). Under the APA, a plaintiff

may ask a federal court to hold that a final federal agency action is unlawful or otherwise

incorrect, and the court can: (1) "compel agency action unlawfully withheld or unreasonably

delayed[,]" and (2) hold unlawful and set aside the agency's action, findings, and conclusions. 5

U.S.C. § 706. The proper defendant for an APA claim is the United States of America, the

agency whose action is being challenged, or the appropriate federal officer. 5 U.S.C. § 703.

Judicial review under the APA does not extend to actions of the federal courts, as they are not

considered to be federal agencies for the purposes of the APA. *See* 5 U.S.C. § 701(b)(1)(B);

*Dotson v. Griesa*, 398 F.3d 156, 177 n.15 (2d Cir. 2005) ("Dotson may not take advantage of the

United States's broad waiver of sovereign immunity in the [APA], 5 U.S.C. § 702, because that

waiver applies only to 'agencies,' and the federal judiciary is not an agency within the meaning

of the act." (citing § 701(b)(1)(B) (citations omitted)). The decision as to whether to seal or

unseal a criminal complaint and/or a criminal indictment filed in a federal district court is left to

that court, not to a prosecutor. *See* Fed. R. Crim. P. 6(e)(4) ("The magistrate judge to whom an

indictment is returned may direct that the indictment be kept secret until the defendant is in

custody or has been released pending trial."); *United States v. Nojay*, 224 F. Supp. 3d 208, 214 (W.D.N.Y. 2016) ("[I]n deciding whether to seal, or unseal, documents in a criminal case, *the court* may take the privacy interests of third parties into account." (emphasis added)); *see also United States v. Gerena*, 869 F.2d 82, 85 (2d Cir. 1989) ("Our recognition of a qualified First Amendment right of access does not mean that Title III materials used by the government in connection with a criminal proceeding must automatically be disclosed. *The district court* must balance the public's right of access against the privacy and fair trial interests of defendants, witnesses and third parties." (emphasis added)); *United States v. Srulowitz*, 819 F.2d 37, 41 (2d Cir. 1987) (noting that, in the context of Rule 6(e)(4), "sealing in the first instance is but a ministerial act, and it is wholly within the discretion of the Magistrate whether to require the prosecutor to justify a request to seal"); *United States v. Southland Corp.*, 760 F.2d 1366, 1380 (2d Cir. 1985) ("The limiting effect of [Rule 6(e)(4)] was to place sealing in the hands of a judicial officer rather than as theretofore in those of a prosecutor.").

To the extent that Plaintiff asserts claims for injunctive and declaratory relief under the APA, including claims of federal constitutional violations, arising from this court's unsealing of the criminal complaint and/or the criminal indictment filed in Plaintiff's criminal proceeding, *see Kourani*, ECF 1:17-CR-0417, 1, 7, such an action is not subject to judicial review under the APA because it is an action of a federal court, *see* § 701(b)(1)(B); *Dotson*, 398 F.3d at 177 n.15. Thus, because the APA does not allow judicial review of these claims, and the DOJ is the sole named defendant, the Court dismisses these claims because the doctrine of sovereign immunity has not been waived, and consequently, the Court lacks subject matter jurisdiction to consider these claims. *See* Fed. R. Civ. P. 12(h)(3).

**3.**      **Plaintiff's "reverse FOIA" claim**

FOIA, *see* 5 U.S.C. § 552, is yet another limited waiver of sovereign immunity, *see*

*Pickering v. DOJ*, No. 13-CV-0674, 2015 WL 1458089, at *10 (W.D.N.Y. Feb. 25, 2015) ("The

extent of the United States' waiver of its sovereign immunity under FOIA can be determined by

reference to the relevant agency's regulatory scheme regarding responding to FOIA requests."),

*amended report & recommendation adopted*, 2015 WL 1461106 (W.D.N.Y. Mar. 20, 2015). It

provides members of the public with a right of access to some information kept by federal

agencies.[10] *See Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.*, 601 F.3d 143, 147

(2d Cir. 2010) ("The 'basic purpose [of FOIA] reflected a general philosophy of full agency

disclosure unless information is exempted under clearly delineated statutory language.'" (citation

omitted, alteration in original)); *see generally Chrysler Corp. v. Brown*, 441 U.S. 281, 290, 292

(1979) ("We have . . .  consistently recognized that the basic objective of [FOIA] is

disclosure. . . . That . . . FOIA is exclusively a disclosure statute is, perhaps, demonstrated most

convincingly by examining its provision for judicial relief." (footnote omitted)); *NRLB v.

Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) ("The basic purpose of FOIA is to ensure

an informed citizenry, vital to the functioning of a democratic society, needed to check against

corruption and to hold the governors accountable to the governed.").

Conversely, however, "[t]he proper avenue for enjoining an agency from disclosing

documents pursuant to FOIA is a reverse FOIA action [under the APA], which would require the

---

[10] Decisions of the federal courts, however, are not subject to the FOIA disclosure provisions. *See* 5 U.S.C. §§ 551(1)(B), 552(f)(1); *Boyd v. Trump*, 478 F. Supp. 3d 1, 4 (D.D.C. 2020) ("FOIA adopts the definition of agency contained in [5 U.S.C. § 551(1)(B)], which specifically excludes from its coverage the courts of the United States. Therefore, to the extent plaintiff intends to bring a FOIA claim against a federal court or court employees, the claim must also be dismissed." (internal quotation marks and citations omitted)).

[p]laintiff[] to prove that the government's disclosure would be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *In re Terrorist Attacks on Sept. 11, 2001*, 293 F.R.D. 539, 545 (S.D.N.Y. 2013) (Maas, M.J.) (internal quotation marks and citation omitted); *see* 5 U.S.C. § 706(2); *Chrysler Corp.*, 441 U.S. at 317-18; *ERG Transit Sys. (USA), Inc. v. Wash. Metro. Area Transit Auth.*, 593 F. Supp. 2d 249, 252 (D.D.C. 2009) ("Reverse FOIA cases are deemed informal agency adjudications, and thus are reviewable under Section 706 of the [APA]."). The Supreme Court of the United States has held, however, "that Congress did not design the FOIA exemptions to be mandatory bars to disclosure." *Chrysler Corp.*, 441 U.S. at 293; *see id.* at 294 ("Congress did not limit an agency's discretion to disclose information when it enacted the FOIA.")

Plaintiff asserts a "reverse FOIA" claim because the DOJ allegedly illegally "*released . . . confidential information*" (ECF 1, at 21) (emphasis added); among the relief he seeks is a declaration by this Court that the "confidential information" at issue "is protected by FOIA [e]xemptions" from public disclosure (*id.* at 25). He also asks the Court to "enjoin the DOJ and others . . . from disclosing the information at issue." (*Id.* at 25-26.) Such a claim is essentially a "reverse FOIA" claim under the APA. *See* 5 U.S.C. § 706(2); *Chrysler Corp.*, 441 U.S. at 317-18. As discussed above, however, the DOJ did not disclose the information at issue; this court did when it unsealed Plaintiff's criminal complaint and/or criminal indictment. *See supra* at 16-17. Because a "reverse FOIA" claim is actually a claim under the APA, the actions of this court are not subject to judicial review under the APA, and the DOJ is the sole defendant in this action,

the Court dismisses Plaintiff's "reverse FOIA" claim under the doctrine of sovereign immunity, and consequently, for lack of subject matter jurisdiction.[11] *See* Fed. R. Civ. P. 12(h)(3).

### D.    Claims under state law

The Court understands Plaintiff's claims under state law as brought under the court's supplemental jurisdiction. A federal district court may decline to exercise supplemental jurisdiction of claims under state law, however, when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). Having dismissed those of Plaintiff's claims of which the Court has original subject matter jurisdiction – Plaintiff's claims under federal law – the Court declines to exercise its supplemental jurisdiction of any of his claims under state law. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

### E.    Leave to amend is denied

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

---

[11] Any such disclosure by the DOJ, though it may not have been required under the exemptions to FOIA disclosure, would not have been unlawful under FOIA. *See Chrysler Corp.*, 441 U.S. at 292-94. Thus, the DOJ would still be subject to sovereign immunity as to such a claim, and the Court would, consequently, still lack subject matter jurisdiction to consider such a claim. *See* Fed. R. Civ. P. 12(h)(3).

Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

## CONCLUSION

The Court dismisses this action. The Court dismisses Plaintiff's claims under federal law under the doctrine of sovereign immunity, for lack to subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). The Court also declines to consider, under its supplemental jurisdiction, Plaintiff's claims under state law. *See* 28 U.S.C. § 1367(c)(3). The Court further denies Plaintiff's request to seal the complaint commencing this action. In addition, the Court denies Plaintiff's requests for a temporary restraining order and a preliminary injunction as moot.

The Court directs the Clerk of Court to make publicly available on the court's electronic docket of this action any document heretofore subjected to a "case participant-only" electronic access restriction on that docket, which includes Plaintiff's complaint commencing this civil action, his IFP application, and his initial prisoner trust account report. (ECF 1-3.)

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court also directs the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order.

SO ORDERED.

Dated:   April 22, 2024
         New York, New York

                                    /s/ Laura Taylor Swain
                                    LAURA TAYLOR SWAIN
                                    Chief United States District Judge

21